CC TO JUDGE __KN__

THE HONORABLE MARSHA J PECHMAN

FILED ____ ENTERED
____ LODGED ____ RECEIVED

JUN 21 2002   KN

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
                                    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Q-PHARMA, INCORPORATED,<br><br>  Plaintiff-Counterdefendant,<br><br>v<br><br>THE ANDREW JERGENS CORPORATION, INCORPORATED,<br><br>  Defendant-Counterclaimant | No C01-1312P<br><br>**THE ANDREW JERGENS COMPANY'S MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**<br><br>**NOTE FOR HEARING: JULY 12, 2002** |

**ORIGINAL**

THE ANDREW JERGENS COMPANY'S MOTION FOR
SANCTIONS PURSUANT TO RULE 11
Case No C01-1312P
118338 0001/923684 2

69

TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I | INTRODUCTION | | 1 |
| II | FACTS | | 1 |
| III | ARGUMENT | | 2 |
| | A | Legal Standards for Rule 11 | 2 |
| | B | Q-Pharma Should be Sanctioned for Its Refusal to Amend Its Reply | 3 |
| | C | Q-Pharma's Prefiling Claim Interpretation Was Frivolous | 6 |
| | D | Q-Pharma Should Have Known that the Accused Product Does Infringe the '373 Patent | 7 |
| | E | Q-Pharma Knew that the '373 Patent is Invalid | 11 |
| IV | CONCLUSION | | 12 |

THE ANDREW JERGENS COMPANY'S MOTION FOR
SANCTIONS PURSUANT TO RULE 11 - i
Case No C01-1312P

118338 0001/923684 2

## TABLE OF AUTHORITIES

Page

Antonious v Spalding and Evenflo Cos , Inc , 275 F 3d
1066 (Fed Cir 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Business Guides, Inc v Chromatic Comms Enters , Inc ,
498 U S 533 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cooter & Gell v Hartmax Corp , 496 U S 384 (1990) . . . . . . . . 3

Estate of Blas v Winkler, 792 F 2d 858 (9th Cir 1986) . . . . . . . 3

Festo Corp v Shoketsu Kinzoku Kogyo Kabushiki Co ,
Ltd , 234 F 3d 558 (Fed Cir 2000) . . . . . . . . . . . . . . . . . . 7

Glaverbel Societe Anonyme v Northlake Marketing &
Supply, Inc , 45 F 3d 1550 (Fed Cir 1995) . . . . . . . . . . . . 5

Hunter-Douglas, Inc v Comfortex Corp , 44 F Supp 2d
145 (S D N Y 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

  -   110 F 3d 780 (Fed Cir 1997) . . . . . . . . . . . . . . . . . 8, 9, 10, 11

Micro Motion, Inc v Kane Steel Co , 894 F 2d 1318 (Fed
Cir 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PREI, Inc v · . . · . . · . . . · · U S 49
(1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Refac Int'l, Ltd v Hitachi, Ltd , 921 F 2d 1247 (Fed Cir
1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Thermocycle Int'l, Inc v A F Henrichsen Sales Corp ,
1991 U S Dist LEXIS 8550 (S D N Y 1991) . . . . . . . . . 11

Transparent-Wrap Mach Corp v Stokes & Smith Co , 329
U S 637 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

View Eng'g v Robotic Vision Sys , 208 F 3d 981 (Fed Cir
2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Virginia Panel Corp v MAC Panel Co , 133 F 3d 860
(Fed Cir 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Walker Process Equip , Inc v Food Mach & Chem Corp ,
382 U S 172 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

THE ANDREW JERGENS COMPANY'S MOTION FOR
SANCTIONS PURSUANT TO RULE 11 - ii
Case No C01-1312P

118338 0001/923684 2

## STATUTES AND COURT RULES

| | |
|---|---:|
| Rule 11 | passim |
| Rule 11(b) | 2 |
| Rule 11(b)(2) | 6 |
| Rule 11(b)(4) | 3 |
| Rule 11(c)(1)(a) | 3 |
| The Sherman Act (Section 2) | 1, 5 |
| Federal Rule of Evidence 408 | 11 |

I

## INTRODUCTION

Q-Pharma and its attorneys have violated Fed R Civ P 11  Q-Pharma and its attorneys violated Rule 11 by filing the complaint in this suit when they knew that the '373 patent was invalid, and when they knew or should have known, had they conducted a reasonable prefiling investigation, that the claims of the '373 patent were invalid  Q-Pharma's attorneys also violated Rule 11 by filing the complaint either without interpreting the claims of the '373 patent or interpreting them in a frivolous manner  Q-Pharma and its attorneys violated Rule 11 again when they filed Q-Pharma's Reply, in which it denied these facts in total disregard of the evidence  Q-Pharma and its attorneys should be sanctioned pursuant to Rule 11 in an amount at least as great as Jergens' attorney's fees and costs in this suit

II

## FACTS

On August 24, 2001, Q-Pharma brought this suit against Jergens, alleging direct infringement, contributory infringement and active inducement [of others] to infringe the claims of U S Patent No 4,654,373 ("the '373 patent") based solely on Jergens' manufacture, advertising and sale of Jergens' Curel® Age Defying Therapeutic Moisturizing lotion containing Coenzyme $Q_{10}$ (the "Accused Product")

On October 5, 2001, Jergens filed an Answer, Affirmative Defenses and Counterclaims, which included counterclaims for  (I) declaratory judgment of invalidity of the '373 patent, (II) declaratory judgment of noninfringment of the '373 patent, (III) declaratory judgment of unenforceability of the '373 patent due to patent misuse, and (IV) antitrust violations under Section 2 of the Sherman Act

On January 17, 2002, Jergens filed a motion for summary judgment of invalidity of the claims of the '373 patent, an opposition to which was filed on February 25, 2002, by Q-Pharma

On April 30, 2002, Jergens filed for a motion for summary judgment of noninfringement of any of the claims of the '373 patent  In response, Q-Pharma filed a Nonopposition on May 9, 2002, and sought a voluntary dismissal with prejudice of their patent infringement claims

On May 16, 2002, Q-Pharma filed an Undertaking Not to Sue Jergens for infringement of the '343 patent with respect to its sale of the Accused Product

On May 17, 2002, a hearing was held by this Court on Jergens' motion for summary judgment of invalidity of the claims of the '373 patent  At that hearing, Jergens put Q-Pharma on notice that its conduct in this suit violated Fed R Civ P 11

III

ARGUMENT

A.  Legal Standards for Rule 11

In relevant part, Federal Rule of Civil Procedure 11 states

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is <u>certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,</u>--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation,
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law,
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery

Fed R Civ P 11(b) (emphasis added)

The purpose of Rule 11 is to "deter baseless filings in the district courts and streamline the administration and procedure of the federal courts " <u>Cooter & Gell v Hartmax Corp</u>, 496 U S 384, 393 (1990)  Rule 11 imposes an affirmative duty among parties and their attorneys to reasonably investigate the factual bases contained in any paper filed  <u>Id</u>  "The rule requires litigants to 'stop and think' before initially making legal or factual contentions " Advisory Committee Note on Rule 11, 28 U S C A, p 260  More specifically, in a Complaint, Rule 11 imposes a duty to take the necessary care in its preparation in order to prevent an abuse of the judicial system because "[b]aseless filings put the machinery of justice in motion burdening courts and individuals alike with needless expense and delay " <u>Cooter</u>, 496 U S. at 398

The imposition of sanctions under Rule 11 does not require a showing of bad faith, but simply a showing of a lack of reasonable investigation  <u>Estate of Blas v Winkler</u>, 792 F 2d 858, 860 (9th Cir 1986)  The reasonableness of an inquiry prior to filing is determined by applying an objective standard at the both to the factual and legal components of the filing  See <u>Business Guides, Inc v Chromatic Comms Enters, Inc</u>, 498 U S 533, 548-50 (1991)

In a patent infringement context, a plaintiff bears a significant prefiling investigation burden before asserting a patent claim, and that burden cannot be fulfilled by merely filing suit on a suspicion of infringement and then asking for discovery to prove the suspicions  See <u>Refac Int'l, Ltd v Hitachi, Ltd</u>, 921 F 2d 1247, (Fed Cir 1990), <u>Micro Motion, Inc v Kane Steel Co</u>, 894 F 2d 1318 (Fed Cir 1990)

B       <u>Q-Pharma Should Be Sanctioned for Its Refusal to Amend Its Reply</u>

Rule 11 requires that denials of factual contentions in papers filed with the Court be warranted on the evidence  Fed R Civ P 11(b)(4)  Q-Pharma's Reply denies several allegations, discussed in the following paragraphs, which denials are not warranted based on the evidence  Q-Pharma was put on notice that these denials were not warranted based on

the evidence at the hearing held in this Court on May 17, 2002, and was provided with further notice by Jergens' service of this Motion for Sanctions Pursuant to Fed R Civ P 11 on Q-Pharma 1 Q-Pharma has not amended its Reply despite having received notice that the denials contained therein do not have a sufficient evidentiary basis   Accordingly, Q-Pharma's refusal to amend its Reply serves as a basis for the award of sanctions pursuant to Rule 11

Paragraph 16 of Jergens' Answer alleges that

> Q-Pharma knows, and/or in the exercise of a reasonable pre-filing investigation should have known, that the amount of $CoQ_{10}$ in the Jergens' Curel® Lotion    is below the ranges described in the '373 patent for both therapeutic and cosmetic purposes, and that to the extent Plaintiff Q-Pharma is asserting the product can be used for purposes proscribed by the '373 patent, $CoQ_{10}$ is not the principal active agent in such use

Q-Pharma denied these allegations in paragraph 2 of its Reply   However, as discussed in further detail below, Q-Pharma could have run two simple tests to determine the amount of $CoQ_{10}$ present in the Jergens Curel® Lotion and to determine what constitutes the principal active ingredient of the Jergens Curel® Lotion, but failed to do so   Furthermore, Q-Pharma could have determined that $CoQ_{10}$ was not the principal active ingredient in Jergens Curel® Lotion by simply reading the list of ingredients on the label   Thus, Q-Pharma's denial of these allegations is not warranted based on the evidence

Paragraph 31 of Jergens' Answer seeks a declaration of invalidity of the '373 patent   Paragraph 31 of Q-Pharma's Reply denies that Jergens is entitled to such a declaration   However, as discussed in further detail below, Q-Pharma was made aware of the invalidity of the '373 patent in a letter from an accused infringer dated December 29, 2000   This letter clearly and undisputably demonstrates the invalidity of the '373 patent   Therefore, Q-

---

1 Jergens' Motion was served on Q-Pharma but not filed with the Court for 21 days pursuant to Rule 11(c)(1)(a)

THE ANDREW JERGENS COMPANY'S MOTION FOR
SANCTIONS PURSUANT TO RULE 11 - 4
Case No C01-1312P
118338 0001/923684 2

Pharma's denial that Jergens is entitled to a declaration of invalidity of the '373 patent is not warranted based on the evidence

Paragraph 47 alleges that bringing this suit violates Section 2 of the Sherman Act. Q-Pharma denies this allegation in paragraph 34 of its Reply. However, Q-Pharma brought this suit with the knowledge that the '373 patent was invalid and not infringed as discussed above. Bringing a patent infringement suit with such knowledge is undisputably a violation of Section 2 of the Sherman Act. PREI, Inc v Columbia Pictures Indus, Inc., 508 U S 49 (1993), Glaverbel Societe Anonyme v Northlake Marketing & Supply, Inc., 45 F 3d 1550 (Fed Cir 1995), Walker Process Equip, Inc v Food Mach & Chem Corp., 382 U S 172 (1965). Furthermore, Q-Pharma has as much as admitted that its primary reason for bringing this suit was to protect its licensees, including Alberto-Culver and Beiersdorf, rather than a belief that the '373 patent was infringed. See Ex Y (Q-Pharma's draft letter to the Federal Trade Commission) at 1-2. Accordingly, Q-Pharma's denial that it has violated Section 2 of the Sherman Act was not warranted based on the evidence

Paragraph 37 of Jergens' Answer seeks a declaration of unenforceability due to misuse of the '373 patent. Paragraph 24 of Q-Pharma's answer denies that Jergens is entitled to such a declaration. However, as discussed above, the evidence shows that Q-Pharma's activities constitute anti-trust violations. Therefore, these activities also constitute patent misuse. Hunter-Douglas, Inc v Comfortex Corp., 44 F Supp 2d 145, 156 (S D N Y 1999) ("[c]learly, a patentee who uses a patent to violate the antitrust laws is guilty of patent misuse"). Indeed, even activities that do not rise to the level of antitrust violations may constitute patent misuse. Transparent-Wrap Mach Corp v Stokes & Smith Co., 329 U S 637, 641 (1947), Virginia Panel Corp v MAC Panel Co., 133 F 3d 860, 872 (Fed Cir 1997) ("violation of   section 2 of the Sherman Antitrust Act   requires more exacting proof than suffices to demonstrate patent misuse"). Therefore, Q-Pharma's denial that Jergens is not entitled to a declaration of patent misuse is not warranted based on the evidence

As discussed above, Q-Pharma's denials of several allegations in Jergens' Answer are not warranted based on the evidence. Q-Pharma has failed to withdraw these unwarranted denials and therefore should be sanctioned pursuant to Rule 11.

C.  **Q-Pharma's Prefiling Claim Interpretation Was Frivolous**

Rule 11 requires an attorney who files a patent infringement suit to interpret the claims of the patent at issue before filing a complaint alleging patent infringement. Antonious v. Spalding and Evenflo Cos., Inc., 275 F.3d 1066, 1072 (Fed. Cir. 2002). "Because claim construction is a matter of law, an attorney's proposed claim construction is subject to the Rule 11(b)(2) requirement that all legal arguments be non-frivolous." Id.

Q-Pharma's prefiling interpretation of the "therapeutically effective amount" limitation of the claims, to the extent that any prefiling interpretation was attempted, is clearly frivolous. First, there is no evidence that Q-Pharma attempted to interpret any claim of the '373 patent prior to filing suit. No documents have been disclosed to Jergens that clearly indicate any prefiling claim interpretation was undertaken, nor does Q-Pharma's privilege log, attached hereto as Exhibit Z, refer to any claim charts or other documents that clearly indicate a prefiling interpretation was, in fact, performed.[2]

Second, to the extent that Q-Pharma's pleadings are reflective of a prefiling claim interpretation, it is clear that such an interpretation was frivolous. In the first substantive paper filed by Q-Pharma after the complaint, Q-Pharma took the position that

> [T]estimony is made irrelevant by Jergens' admission that its Curel Therapeutic Moisturizing Lotion With Coenzyme $Q_{10}$ in fact contains CoQ10. See Answer, Affirmative Defenses and Counterclaims ¶ 15 (admitting that accused product contains $CoQ_{10}$). Q-Pharma believes that this admission by Jergens establishes infringement, for it contends that any topical administration of $CoQ_{10}$ to treat skin, as would be done by a person using [Jergens'] Curel Therapeutic Moisturizing Lotion with Coenzyme $Q_{10}$, infringes the '373 patent.

---

[2] Jergens will seek discovery on this issue to the extent permitted by the Court.

THE ANDREW JERGENS COMPANY'S MOTION FOR
SANCTIONS PURSUANT TO RULE 11 - 6
Case No. C01-1312P
118338 0001/923684 2

Plaintiff's Memorandum in Opposition to Defendant's Motion to Transfer (October 22, 2001) at p 5, ll 16-18 (emphasis added) The position that any administration of $CoQ_{10}$, regardless of the amount of $CoQ_{10}$ present, infringes the '373 patent is plainly contradicted by the specification, which defines "therapeutically effective amount" by distinguishing between therapeutic and cosmetic uses, noting that for pharmacological purposes, $CoQ_{10}$ is present "as the active principle in amounts from 0 1 to 10%" See the '373 Patent at col 2, ll 53-60 Thus, it is frivolous to take the position that any amount of $CoQ_{10}$ literally infringes the '373 patent Furthermore, the file history clearly shows that the "therapeutically effective amount" limitation was added to the claims in order to overcome a prior art rejection See Jergens' Motion for Summary Judgment on Noninfringement at 3-5 Thus, taking the position prior to filing the Complaint that a topical administration of any amount of $CoQ_{10}$ would infringe the '373 patent under the doctrine of equivalents is also frivolous See <u>Festo Corp v Shoketsu Kinzoku Kogyo Kabushiki Co, Ltd</u>, 234 F 3d 558, 569 (Fed Cir 2000) (holding that the doctrine of equivalents is completely barred for a claim limitation that has been amended to overcome prior art) Thus, Q-Pharma's prefiling interpretation that any topical administration of $CoQ_{10}$ infringes the '373 patent is frivolous and sanctionable under Rule 11

D. <u>Q-Pharma Should Have Known That the Accused Product Does Not Infringe the '373 Patent</u>

In addition to requiring an attorney to interpret the claim, Rule 11 also requires an attorney to make a reasonable pre-filing effort, independent of his client, to determine whether the accused product satisfies each of the claim limitations <u>Antonious v Spalding and Evenflo Cos, Inc</u>, 275 F 3d 1066, 1074 (Fed Cir 2002) Each claim of the '373 patent requires "a therapeutically effective amount" of Coenzyme $Q_{10}$ ("$CoQ_{10}$") and also requires that CoQ10 be the "principal active ingredient" Q-Pharma's counsel failed to make a reasonable effort to determine whether the Accused Product met either of these limitations prior to filing this suit

THE ANDREW JERGENS COMPANY'S MOTION FOR
SANCTIONS PURSUANT TO RULE 11 - 7
Case No C01-1312P
118338 0001/923684 2

1  Q-Pharma failed to run either of two simple tests that would have confirmed
2  noninfringement. The '373 patent defines a "therapeutically effective amount" of $CoQ_{10}$ to
3  be at least 0.1%. The '373 patent, c 2, ll 53-54. Early in this suit, Q-Pharma admitted that
4  the amount of $CoQ_{10}$ present in the Accused Product "could be resolved by any competent
5  analytic chemist." Ex. AA (Plaintiff's Memorandum in Opposition to Defendant's Motion to
6  Transfer) at 6. Having a competent analytic chemist test the Accused Product would have
7  revealed that the Accused Product contains far less than a "therapeutically effective amount."
8  Ex. BB (Maksimoski Decl.) ¶¶ 3, 7.

9  With regard to the "principal active ingredient limitation," Q-Pharma's expert, Mort
10 Westman, testified that the "negative omission" test would determine which ingredient is the
11 "principle active ingredient." Westman Depo at 38, l 3 to 41, l 15. When Jergens
12 performed this very test, it clearly revealed that $CoQ_{10}$ was <u>not</u> the principal active ingredient
13 as required by the claims. Ex. CC (Witt Decl.) ¶ 8.

14 Q-Pharma could also have determined that the Accused Product does not infringe any
15 claims of the '373 patent by simply reading the list of ingredients on the label. The Accused
16 Product is a skin moisturizer. The label of the Accused Product reveals that it contains more
17 glycerine than any ingredient other than water. Glycerine is a well-known skin moisturizer.
18 Additionally, four other active ingredients are listed on the label before $CoQ_{10}$. Thus, by
19 simply reading the label on the Accused Product, Q-Pharma knew or should have known that
20 the $CoQ_{10}$ is not the "principal active ingredient" as recited in the claims.

21 Q-Pharma's failure to conduct either one of these two simple tests, either of which
22 would have established noninfringement, is not reasonable. In <u>Judin v. United States</u>, the
23 Federal Circuit reversed the trial court's decision not to sanction the patentee under Rule 11
24 when the patentee "could have purchased a device for a minuscule amount, compared to the
25 cost of the litigation" in order to determine whether the device infringed the patent. 110 F 3d
26 780, 783 (Fed Cir 1997). Similarly, the aforementioned tests could have been performed

THE ANDREW JERGENS COMPANY'S MOTION FOR
SANCTIONS PURSUANT TO RULE 11 - 8
Case No C01-1312P
118338 0001/923684 2

for a minuscule amount, compared to the cost of this litigation. Q-Pharma's additional failures to ask Jergens basic questions that could have established noninfringement, or read the ingredient list on the label of the Accused Product, are similarly not reasonable. Thus, Q-Pharma failed to conduct an adequate prefiling investigation and therefore violated Rule 11 by bringing this suit.

In its Non-Opposition to Motion for Summary Judgment of Non-Infringement (the "Non-Opposition"), Q-Pharma attempted to establish a reasonable basis for bringing this suit by claiming that it believed the Accused Product had a therapeutically effective amount of $CoQ_{10}$ based on certain statements on the label of the Accused Product. However, the Federal Circuit has made it clear that reliance on advertising as a basis for filing a suit is not sufficient. In <u>View Eng'g v. Robotic Vision Sys.</u>, 208 F.3d 981 (Fed. Cir. 2000), the Federal Circuit noted that the patentee had not seen the alleged infringer's products prior to filing suit, but rather based its belief of infringement solely on the alleged infringer's "own advertising and its claims to customers as to what its machines did." <u>Id.</u> at 983. The court concluded that

> [L]ittle inquiry, much less a reasonable one, was undertaken by [patentee's law firm] in the instant case. Before filing []claims of patent infringement, Rule 11, we think, must be interpreted to require the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted.

<u>Id.</u> at 986.

The similarity to this case is striking. In its Non-Opposition, Q-Pharma admits that it simply assumed that the Accused Product infringed based on the advertising on the label.

> Based on the[] representations on the [Jergens Curel] label, <u>Q-Pharma assumed what any reasonable consumer reading the label would assume</u> that Curel® Therapeutic Moisturizing Lotion with Coenzyme $Q_{10}$ contains enough $CoQ_{10}$ to accomplish the "therapeutic moisturizing" promised by its name, and thus had a therapeutically effective amount of $CoQ_{10}$. <u>Q-pharma therefore brought this action for infringement</u>.

Q-Pharma's Non-Opposition at 2 (emphasis added).

THE ANDREW JERGENS COMPANY'S MOTION FOR
SANCTIONS PURSUANT TO RULE 11 - 9
Case No. C01-1312P
118338 0001/923684 2

Relying on such an assumption as a basis for filing this patent infringement suit is simply not reasonable, especially when Q-Pharma admits that this assumption could have been confirmed by "any competent analytical chemist." Furthermore, this assumption does not provide Q-Pharma with a reasonable basis for a belief that $CoQ_{10}$ is the "principal active ingredient," which is also required by each claim of the '373 patent.

In addition to Q-Pharma's failure to run the aforementioned tests, Q-Pharma also failed to simply ask Jergens what amount of $CoQ_{10}$ is present in the Accused Product or whether $CoQ_{10}$ was the principal active ingredient in the Accused Product. The Federal Circuit has indicated that the failure to ask for information from an accused infringer, prior to suit, in order to verify infringement is a basis for Rule 11 sanctions. See Judin, 110 F.3d at 784 (imposing Rule 11 sanctions when patentee failed to ask for a sample product from the accused infringer so that infringement could be confirmed).

Q-Pharma's Non-Opposition also attempts to shift the blame for its lack of a reasonable basis to Jergens by complaining about Jergens' refusal to disclose the amount of $CoQ_{10}$ in the Accused Product in response to its discovery requests. Non-opposition at 2-3. However, these discovery requests came <u>after</u> this litigation was commenced. Rule 11 requires that the inquiry be taken before the suit is filed, not after. See Judin, 110 F.3d at 784. Accordingly, any <u>post</u>-filing refusal by Jergens to divulge the amount of $CoQ_{10}$ in the Accused Product does not excuse Q-Pharma from its obligation to make reasonable efforts <u>prior</u> to the filing of this suit to determine whether the Accused Product infringes the '373 patent.

Q-Pharma and their attorneys have made it clear that they felt free to pursue this reckless conduct because Q-Pharma is judgment-proof. See Ex. DD (Letter from S. Dunwoody to S. Kelber dated May 20, 2002) at 1-2.3 This Court should not tolerate such

---

3 Jergens is aware that Federal Rule of Evidence 408 prohibits the use of settlement negotiations in compromising or attempting to compromise a claim as evidence to prove
(continued  )

behavior and should send a strong message to Q-Pharma and its attorneys that such reckless conduct will not be tolerated by sanctioning Q-Pharma and its attorneys pursuant to Rule 11

For the reasons discussed above, Q-Pharma has utterly failed to make a reasonable effort to determine whether the Accused Product infringes the '373 patent Thus, Q-Pharma and its attorneys should be sanctioned under Rule 11 for bringing this suit 4

E      Q-Pharma Knew or Should Have Known That the '373 Patent Is Invalid

Bringing a patent infringement suit with the knowledge that the patent is invalid is a basis for awarding sanctions under Rule 11 Thermocycle Int'l, Inc v A F Henrichsen Sales Corp., 1991 U S Dist LEXIS 8550, *7 (S D N Y 1991) Q-Pharma knew or should have known that the '373 patent is invalid As fully briefed in Jergens' motion for summary judgment of invalidity of the '373 patent (the "Invalidity Motion"), the '373 patent is not entitled to the benefit of the first U S application (U S Ser No 476,556), but rather is only entitled to the filing date of the continuation-in-part application (U S Ser No 711,034) Invalidity Motion at 11-12 Because Q-Pharma is not entitled to the earlier filing date, the publication of its own Italian patent application corresponding to the earlier-filed U S application renders the '373 patent invalid Id at 17-21 Q-Pharma was put on notice of this issue when it received a letter dated December 29, 2000, from an accused infringer clearly showing that the '373 patent was not entitled to the filing date of the first U S application and was therefore invalid in light of a corresponding Belgian application (also based on the original Italian application) Ex AA at 1-2 Thus, Q-Pharma either know or should have known that the '373 patent was invalid when it received this letter, which was approximately

---

(   continued)
liability for that claim However, in this instance, Jergens offers Ex DD in support of its motions for sanctions pursuant to Fed R Civ P 11, not to prove Q-Pharma's liability for any claim in this suit
4 An attorney and client may be held jointly and severally liable for filings that are not well grounded in fact under Rule 11 Judin v United States, 110 F 3d 780, 785 (Fed Cir 1997)

THE ANDREW JERGENS COMPANY'S MOTION FOR
SANCTIONS PURSUANT TO RULE 11 - 11
Case No C01-1312P
118338 0001/923684 2

seven months prior to the filing of the complaint in this suit [5] Accordingly, Q-Pharma did not have good-faith basis for bringing this infringement suit and Rule 11 sanctions are appropriate

## IV

## CONCLUSION

For the foregoing reasons, Jergens respectfully request that this Court sanction Q-Pharma pursuant to Rule 11 of the Federal Rules of Civil Procedure in an amount at least as great as Jergens' attorney's fees and costs in defending itself in this suit.

RESPECTFULLY SUBMITTED this 21st day of June, 2002.

PIPER RUDNICK LLP

By _____
Steven B. Kelber
Admitted Pro Hac Vice

LANE POWELL SPEARS LUBERSKY LLP
    Larry S. Gangnes
    WSBA No. 08118
Attorneys for Defendant/Counterclaimant
The Andrew Jergens Corporation, Inc.

---

[5] Q-Pharma has not produced any opinion from counsel concerning this issue, nor does it appear from their privilege log that any written opinion exists.

THE ANDREW JERGENS COMPANY'S MOTION FOR
SANCTIONS PURSUANT TO RULE 11 - 12
Case No. C01-1312P
118338 0001/923684 2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above **THE ANDREW JERGENS COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11** was served on June 21, 2002 via legal messenger on counsel of record at the following address

> Stuart R Dunwoody, Esq
> Bruce A Kaser, Esq
> DAVIS WRIGHT TREMAINE LLP
> 2600 Century Square
> 1501 Fourth Avenue
> Seattle, Washington 98101-1688



Jill A Kaiser

THE ANDREW JERGENS COMPANY'S MOTION FOR
SANCTIONS PURSUANT TO RULE 11 - 13
Case No C01-1312P
118338 0001/923684 2